# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3265

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Sid L. Martin, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  February 10, 2004
Filed:  June 10, 2004

_____

Before LOKEN, Chief Judge, BOWMAN and WOLLMAN, Circuit Judges.

_____

LOKEN, Chief Judge.

After serving a 120-month sentence for manufacturing and possessing destructive devices without a license, Sid L. Martin began a three-year term of supervised release on March 13, 2002.  His probation officer filed a Violation Report on July 31, 2003, followed by a motion to revoke his supervised release, alleging that Martin violated the standard condition that "the defendant shall not commit another federal, state, or local crime" when he assaulted his teenage stepdaughter, Brandy Moss,  and his mother-in-law, Betty Vaughn, during a domestic disturbance.  After

an evidentiary hearing, the district court[1] found that Martin committed the two assaults, revoked supervised release, and sentenced Martin to eighteen months in prison with no further term of supervised release. Martin appeals, arguing the court erred by admitting out-of-court hearsay statements by Moss and Vaughn, neither of whom appeared at the hearing, and by imposing a greater prison sentence than the five-to-eleven month range set forth in U.S.S.G. § 7B1.4, the Sentencing Commission's policy statement regarding revocation prison sentences. We affirm.

Moss called 911 from a neighbor's house on July 31, sobbing and nearly hysterical, to report that Martin had dragged her up the stairs and hit her repeatedly when she would not end a telephone conversation. Before police officers could arrive, Vaughn also called 911, reporting that she arrived on the scene when summoned by Moss, and that Martin had a gun and was throwing Moss's personal belongings in the yard and street. When the police arrived, Martin refused to put up his hands and approach the officers, instead retreating into his house, where there were three young children, and locking the door. It took two police officers nearly an hour to persuade Martin to come out of the house. By then, twenty to twenty-five police officers had responded to the potentially dangerous situation. The police interviewed the children. One said Martin had hit Moss many times; another said Martin kept a gun in the house. No gun was found. Vaughn reported that one of the items thrown by Martin had struck her in the face. Neither Moss nor Vaughn required medical treatment. Martin was arrested without further resistance and charged with assaulting Moss and Vaughn. The police contacted his probation officer, and these revocation proceedings followed.

At the preliminary hearing, counsel for Martin complained that neither Moss nor Vaughn appeared, noting that Rule 32.1(b)(2)(C) of the Federal Rules of Criminal

---

[1]The HONORABLE GARY A. FENNER, United States District Judge for the Western District of Missouri.

Procedure requires a revocation hearing at which Martin may "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." The magistrate judge found probable cause to revoke but advised the prosecutor, "I do expect that when it goes in front of Judge Fenner [for the final revocation hearing] that you would have the principal witnesses available for testimony here including [Moss] who's down in Texas." At the start of the final hearing, the prosecutor advised:

> Miss Moss is somewhere in Texas and the government has not been able to find her at this time. So she is not here today. And we did not serve Betty Vaughn with a subpoena. We weren't sure about her state of mind because she is Mr. Martin's mother-in-law.

The district court then asked Martin and defense counsel whether they wished to proceed with the hearing; Martin said yes. The government introduced an audiotape of the 911 conversations and the testimony of the probation officer and two police officers who responded to the 911 calls. The court overruled Martin's hearsay objections and admitted out-of-court statements by Moss and Vaughn.

1. Martin first argues that the district court deprived him of his right to question Moss and Vaughn, the complaining adverse witnesses, when it overruled his hearsay objections. The government responds that Martin waived this issue when he said the hearing could continue without their appearances. We disagree in part. Martin may have waived his right to confront these witnesses, but he did not waive his right to object to improper hearsay evidence offered by the government to meet its burden of proof that he committed assault offenses warranting revocation.

Hearsay evidence offered by the government may be admitted at a supervised release revocation hearing if the evidence is sufficiently reliable and the government has a "reasonably satisfactory explanation" for not producing the witness. United

States v. Zentgraf, 20 F.3d 906, 910 (8th Cir. 1994); see United States v. Bell, 785 F.2d 640, 642-44 (8th Cir. 1986). Here, the government's explanation for not producing Moss -- she was in Texas and could not be found -- was reasonably satisfactory. Her hearsay statements to the 911 operator and the police -- that Martin repeatedly hit her and dragged her up the stairs -- were prima facie evidence of assault under Missouri law. See MO. STAT. ANN. § 565.074(1)(5). The statements were sufficiently reliable, as they were spontaneous and were corroborated by the 911 audiotape, by the young child interviewed after Martin surrendered, and by what the police officers saw as well as heard at the scene. Thus, the district court did not abuse its discretion by admitting Moss's out of court statements. The court's finding that Martin violated his conditions of supervised release by assaulting Brandy Moss was not clearly erroneous.

On the other hand, the balancing test we must apply under Zentgraf and Bell produces a different conclusion regarding Betty Vaughn. First, the government's reason for not producing Vaughn was not "reasonably satisfactory" from the standpoint of whether to admit Vaughn's out-of-court hearsay. The prosecutor's explanation -- "We weren't sure about her state of mind" -- suggests knowledge or a suspicion that Vaughn would not want to accuse Martin of assault at a hearing to determine whether he should be imprisoned. Such an explanation is virtually an admission by the government that out-of-court hearsay to the contrary would be unreliable. Second, Vaughn's out-of-court statements suggested that she was hit *inadvertently* while Martin was throwing Moss's possessions on the lawn and into the street. Third, there was no corroborating evidence that Martin assaulted Vaughn. In these circumstances, Vaughn's hearsay statements should not have been received, at least for the purpose of proving she was assaulted. The district court's finding that Martin assaulted Betty Vaughn is reversed. However, because we have affirmed the assault finding as to Brandy Moss, we affirm the court's judgment that Martin violated the standard condition prohibiting him from committing another state or local crime while on supervised release.

2. The Guidelines classify Martin's assault as a Grade C violation of supervised release.  See U.S.S.G. § 7B1.1(a)(3), p.s.  When initially sentenced, Martin was in criminal history category III, so his Guidelines revocation sentencing range is five to eleven months in prison.  See § 7B1.4(a), p.s.  Martin argues that the district court erred in imposing a greater eighteen-month revocation sentence.  He concedes, as he must, that the policy statement is non-binding.  See United States v. Hensley, 36 F.3d 39, 41-42 (8th Cir. 1994).  Because the policy statement is non-binding, "a revocation sentence exceeding the suggested range is just that, a sentence.  It is not an 'upward departure' because there is no binding guideline from which to depart." United States v. Shaw, 180 F.3d 920, 922 (8th Cir. 1999).  As the sentence is not an upward departure, it is not subject to the de novo review recently mandated by the Protect Act.  See 18 U.S.C. § 3742(e)(3).  Rather, we review for abuse of discretion the district court's decision to sentence Martin to a longer term than that suggested by § 7B1.4.  See United States v. Kaniss, 150 F.3d 967, 968 (8th Cir. 1998).

Martin's initial offense was a class C felony, so the eighteen-month revocation sentence is within the statutory maximum.  See 18 U.S.C. § 3583(e)(3).  In imposing a revocation sentence, the district court must consider a number of statutory sentencing factors, including "any pertinent policy statement."  18 U.S.C. §§ 3553(a)(5), 3583(e).  Here, noting that the guidelines suggest a range of five to eleven months, the district court explained:

> I further find and take into consideration the relevant conduct of your failure to obey the lawful command of the police officers who arrived to investigate the 911 call by refusing to show your hands to the officer, refusing to put your hands up, refusing to approach the officers as you were requested, refusing to stop as you were requested and refusing to come out of your house as you were requested by the officers.  And I believe that the officers were conducting themselves in an appropriate fashion, that their objective was to protect everyone involved in the incident including you . . . .  And your conduct certainly

served to exacerbate, to make the entire situation much worse than it otherwise had to be.

Martin argues that the court abused its discretion by failing to consider the Chapter Seven commentary and application notes. But the sentencing statutes do not require detailed findings or a mechanical listing of every relevant factor. After careful review, we are satisfied that the court's explanation demonstrates that it did consider the relevant sentencing factors in 18 U.S.C. § 3553(a) as well as the Chapter Seven policy statements. Compare United States v. Jones, 973 F.2d 605, 607-08 & n.4 (8th Cir. 1992), with United States v. Tschebaum, 306 F.3d 540, 544-45 (8th Cir. 2002). We also conclude that the sentence is warranted by the evidence that was properly received at the revocation hearing and therefore is not an abuse of the court's sentencing discretion.

The judgment of the district court is affirmed.

_____